UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERNATIONAL METALIZING & COATINGS,
INC., a foreign corporation,
Individually, and f/u/b/o TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA,
a foreign corporation,

    Plaintiffs,

v.                                              CASE NO: 8:09-cv-643-T-33AEP

M&J CONSTRUCTION COMPANY OF
PINELLAS COUNTY, INC., a Florida
corporation, and Mobro MARINE, INC.,
a Florida corporation,

    Defendants.

_____/

**ORDER**

    This cause comes before the Court pursuant to Defendant Mobro Marine, Inc.'s ("Mobro") Motion for Summary Judgment as to Count I of its Cross-Claim (Doc. # 91), Defendant M&J Construction Company of Pinellas County, Inc.'s ("M&J") Motion for Summary Judgment as to Counts I and II of Mobro's Cross-Claim (Doc. # 97), and the responses thereto (Docs. # 110 and 113, respectively).

**I.  BACKGROUND**

    Mobro delivered Barge MB 54 ("Barge") to M&J at New Smyrna, Florida on October 11, 2005 in accordance with a Vessel Bareboat

Charter Contract ("First Bareboat Charter"). (Depo. Boutzoukas Doc. # 95 Exh. 5). Mobro entered into a second written Vessel Bareboat Charter Contract ("Second Bareboat Charter") with M&J Construction for the bareboat charter of the Barge on or about April 7-11, 2006. (Doc. # 91 Exh. A).

The terms and conditions of the Second Bareboat Charter required that M&J obtain "a minimum of $1,000,000.00 P&I [protection and indemnity] insurance, which shall name MOBRO MARINE, INC. as additional assured." (Doc. # 91 Exh. A).

To comply with the terms of the Second Bareboat Charter, M&J's vice president, James Boutzoukas, sent Mobro sample copies of certificates of liability insurance concerning hull and machinery, protection and indemnification ("P&I"), and pollution insurance coverage with respect to the Barge, in which M&J was the named insured and Mobro was an additional insured. (Aff. Boutzoukas Doc. # 100 Exh. D). One of the sample certificates contained the following language: "PLEASE NOTE: NAMED WINDSTORM EXCLUSION APPLIES."

Boutzoukas received a response from Trish Sabol of Mobro indicating that the sample certificates were acceptable to Mobro. (Aff. Boutzoukas Doc. # 100 Exh. D). On April 21, 2006, a Certificate of Insurance on the Barge, confirming hull and machinery, protection and indemnity, and pollution liability insurance coverage with M&J as insured and Mobro as an additional

insured ("Certificate"), was issued. (Aff. Boutzoukas Doc. # 97 Exh. E). The Certificate did not contain the windstorm exclusion language that appeared in the sample certificate. (Aff. Boutzoukas Doc. # 97 Exh. E).

The Second Bareboat Charter further provided that M&J would indemnify Mobro against "any and all claims" for property damage. The exact language of the relevant portion of the indemnification provision is as follows:

> Charterer [M&J] does hereby indemnify and hold harmless Owner [Mobro] against any and all claims for bodily injury and property damage of whatsoever nature.

(Doc. # 91 Exh. A).

M&J maintained exclusive physical control and possession of the Barge, without interruption or redelivery to Mobro, between October 10, 2005 and May 15, 2007. (Depo. Boutzoukas 88-89 Doc. # 95). While the Barge was in M&J's possession, M&J bore responsibility for the maintenance of the Barge, its spuds, winch, and winch cables. (Depo. Boutzoukas 92-93 Doc. # 95).

On June 11, 2006, in anticipation of the arrival of Tropical Storm Alberto, M&J attempted to move the Barge away from the Howard Frankland Bridge ("Bridge") when one of the spud cables on the Barge broke, stranding the Barge in close proximity to the Bridge. On June 13, 2006, the sea and weather conditions caused the Barge to break loose from its moorings and allide with the Bridge, causing damage to International Metalizing & Coatings'

("IM&C") equipment and personal property aboard the Barge. (Depo. Boutzoukas 38 Doc. # 95). M&J's post-loss investigation revealed that the spud cable broke at a point of deterioration. (Depo. Boutzoukas 67-68 and 92-93 Doc. # 95).

Travelers Property Casualty Company of America (Travelers), IM&C's insurer, sent Mobro a demand letter informing Mobro of IM&C's property damage claim on January 25, 2007. (Aff. Bolz Doc. # 93 Exh. 1). Travelers' attorneys sent Mobro a follow-up letter on September 19, 2007. (Aff. Bolz Doc. # 93 Exh. 2).

On September 28, 2007, Mobro made a demand of M&J that M&J undertake the defense and indemnification of Mobro with respect to Travelers and IM&C's ("Plaintiffs") claim. (Aff. Bolz Doc. # 93 Exh. 3). On April 7, 2009, Mobro was served with a copy of Plaintiffs' initial complaint (Doc. # 3), which alleged that Mobro breached its duty of seaworthiness at the time the Second Bareboat Charter was executed (Doc. # 1). On April 17, 2009, Mobro made yet another demand of M&J for a defense and indemnification. (Aff. Bolz Doc. # 93 Exh. 4). M&J refused to defend and indemnify Mobro.

Mobro filed a cross-claim against M&J with two counts: (1) breach of contract with respect to the indemnification provision, and (2) breach of contract with respect to the P&I insurance provision. (Doc. # 68). Mobro seeks summary judgment as to Count I (Doc. # 91), and M&J seeks summary judgment as to Counts

I and II (Doc. # 97).

**II. <u>STANDARD OF REVIEW</u>**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a

moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. COUNT I: INDEMNIFICATION

The parties agree that general maritime law governs the interpretation of the Second Bareboat Charter. With regard to

maritime contracts, federal courts have established two general rules of construction with regard to indemnification provisions: (1) indemnification provisions "should be given their natural and most commonly understood meaning in light of the subject matter and circumstances," Natco Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1193 (11th Cir. 2001)(quoting Gibbs v. Air Canada, 810 F.2d 1529, 1533 (11th Cir. 1987)); and (2) indemnification for the indemnitee's own negligence will only be permitted where the intent to so indemnify is clearly and unequivocally expressed in the indemnification provision at issue, Lanasse v. The Travelers Insurance Company, 450 F.2d 580 (5th Cir. 1971)[1].

In Lanasse, where a time charter's indemnity provision "insulated [the charterer] only against liability for claims 'directly or indirectly connected with the [vessel owner's] possession, management, navigation, and operation' of the vessel," Lanasse, 450 F.2d at 583, but did not expressly indemnify the charterer against his own negligence, the Fifth Circuit refused to impose liability on the vessel owner for a personal injury caused by the charterer's negligence.

The relevant portion of the indemnification provision at

---

[1] The case law of the former Fifth Circuit rendered prior to the close of business on September 30, 1981 has been adopted as binding precedent in this judicial circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

issue here is as follows:

> Charterer [M&J] does hereby indemnify and hold harmless Owner [Mobro] against any and all claims for bodily injury and property damage of whatsoever nature.

The Court notes that although this provision, like the <u>Lanasse</u> provision, does not clearly and unequivocally require M&J to indemnify Mobro against damage arising from Mobro's own negligence, Plaintiffs have not asserted a negligence claim against Mobro. Rather, Plaintiffs have asserted that Mobro breached the warranty of seaworthiness "at the time it entered into" the Second Bareboat Charter (Doc. # 21).

Because negligence is not at issue, the Court simply interprets the indemnification provision based on its plain meaning. Under its natural and most commonly understood meaning, the provision's key language — "indemnify and hold harmless Owner against any and all claims" — would encompass Plaintiffs' claim that Mobro breached the warranty of seaworthiness if the claim was that the breach of warranty of seaworthiness occurred *after* the execution of the Second Bareboat Charter. However, Plaintiffs' claim asserts that Mobro breached the warranty of seaworthiness "at the time it entered into" the Second Bareboat Charter.

Under ordinary circumstances, where the vessel owner has possession and control of the vessel upon executing a bareboat contract, a charter's indemnification provision would not apply

8

to claims that arose at the point of the charter's execution. However, in this instance, Mobro did not have possession and control of the Barge at the time the Second Bareboat Charter was executed; M&J did. Because it appears that M&J maintained possession of the Barge for the duration of the First Bareboat Charter through the execution and duration of the Second Bareboat Charter, it is possible that M&J should be considered the owner of the Barge at the time of the Second Bareboat Charter's execution, in which case M&J likely had an obligation to indemnify Mobro against any and all claims arising at the time of the Second Bareboat Charter's execution; however, if Mobro bore responsibility for the Barge at the time of execution, M&J need not indemnify Mobro. Whether Mobro or M&J bore responsibility for the vessel at the time of the Second Bareboat Charter's execution is, therefore, a genuine issue of material fact, making summary judgment as to M&J's alleged breach of the indemnification provision inappropriate.

## IV. COUNT II: INSURANCE

The Court finds that summary judgment is due to be granted as to M&J's alleged breach of the Second Bareboat Charter's P&I Insurance provision.

Florida law defines the term "policy" for insurance purposes as "a written contract of insurance or written agreement for or effecting insurance, *or the certificate thereof*, by whatever name

9

called, and includes all riders, endorsements, and papers which are part thereof." Fla. Stat. § 627.402(1) (2010) (emphasis added). Certificates of insurance are "documents issued by or on behalf of insurance companies to third parties who have not contracted with the insurer to purchase an insurance policy." Allen D. Windt, *Duty to Indemnify: Certificates of Insurance*, 2 Ins. Claims & Disputes § 6:37A(5th ed. Thompson West)(database) (updated March 2010). A certificate of insurance issued by the insurer's authorized representative that names an additional insured is evidence of "additional insured" status. Natl. Union Fire Ins. Co. v. Liberty Mut. Ins. Co., No. 03-80106-CIV, 2008 WL 544732 (S.D. Fla. Feb. 26, 2008). So long as "(1) the certificate was issued by the insurer, or by someone with the actual or apparent authority to do so, and (2) the certificate states that the certificate holder is an additional insured, the insurer cannot refuse to honor its commitment simply because it was not further documented." Windt, *Duty to Indemnify: Certificates of Insurance*, 2 Ins. Claims & Disputes § 6:37A.

The Certificate of Insurance, which was issued by the authorized representative of M&J's insurer, and names Mobro as an additional insured with respect to coverage for hull and machinery, protection and indemnity, and pollution liability insurance (Aff. Boutzoukas Doc. # 97 Exh. E), proves that M&J satisfied the Second Bareboat Charter's requirement that it

10

obtain protection and indemnity insurance naming Mobro as an additional assured. (Doc. # 91 Exh. A).

The Court has considered, but finds without merit, Mobro's argument that there is an issue of material fact as to whether the insurance actually obtained is the insurance coverage represented in the sample Certificates of Insurance. Specifically, one of the sample Certificates of Insurance that M&J submitted for Mobro's approval stated "PLEASE NOTE: NAMED WINDSTORM EXCLUSION APPLIES," (Aff. Boutzoukas Doc. # 97 Exh. D), but the actual Certificate of Insurance issued does not reference the named windstorm exclusion (Aff. Boutzoukas Doc. # 97 Exh. E). The Court finds, however, that Mobro has not established the significance of this difference between the sample certificate and the actual certificate such that it raises a genuine issue of material fact as to whether or not M&J procured P&I insurance as provided in the Second Bareboat Charter.

Accordingly, it is

**ORDERED**, **ADJUDGED**, AND **DECREED:**

(1) Defendant Mobro's Motion for Summary Judgment as to Count I (Doc. # 91) is **DENIED.**

(2) Defendant M&J's Motion for Summary Judgment as to Counts I and II (Doc. # 97) is **DENIED as to Count I** and **GRANTED as to Count II**.

11

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of September, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record